UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

24 FRANKLIN AVE. R.E. CORP. and MARC
CASTALDI,

                              Plaintiffs,

         -v-                                                          No. 09-CV-3223 (KMK)

THOMAS HEASHIP as a member of the Planning Board          OPINION & ORDER
of the Town/Village of Harrison, ALICE AURUTICK as
a member of the Planning Board of the Town/Village of
Harrison, ANTHONY SPANO as a member of the
Planning Board of the Town/Village of Harrison,
RAYMOND A. KRAUS as a member of the Planning
Board of the Town/Village of Harrison, NONIE REICH
as a member of the Planning Board of the Town/Village
of Harrison, MARSHALL DONAT as a member of the
Planning Board of the Town/Village of Harrison, MARK
RINALDI as a member of the Planning Board of the
Town/Village of Harrison, STEPHEN MALFITANO as
a member of the Board of Trustees of the Town/Village
of Harrison, JOHN CANNELLA as a member of the
Board of Trustees of the Town/Village of Harrison,
ROBERT PALADINO as a member of the Board of
Trustees of the Town/Village of Harrison, THOMAS
SCAPPATICCI as a member of the Board of Trustees of
the Town/Village of Harrison, PAT VETERE as a
member of the Board of Trustees of the Town/Village of
Harrison, STEPHEN MALFITANO individually, and as
Supervisor/Mayor of the Town/Village of Harrison, and
ROBERT W. FITZSIMMONS as Building Official of
the Town/Village of Harrison,

                              Defendants.

---

Appearances:

Joseph C. Messina, Esq.
Law Office of Joseph C. Messina
Mamaroneck, NY
*Counsel for Plaintiffs*

David S. Klausner, Esq.
Law Office of David S. Klausner, PLLC
White Plains, NY
*Counsel for Plaintiffs*

Mark N. Reinharz, Esq.
Richard S. Finkel, Esq.
Bond, Schoeneck & King, PLLC
Garden City, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

Plaintiffs 24 Franklin Ave. R.E. Corp. and Marc Castaldi (together, "Plaintiffs"), bring

this Action pursuant to 42 U.S.C. §§ 1983 and 1988 alleging that Defendants violated the

substantive and procedural due process and equal protection clauses of the Fourteenth

Amendment.  (*See generally* Am. Compl. (Dkt. No. 1.)[1]  Four of Plaintiffs' § 1983 causes of

action, and Plaintiffs' § 1988 cause of action, are asserted against Defendants Thomas Heaship,

Alice AuRutick, Anthony Spano, Raymond A. Kraus, Nonie Reich, Marshall Donat, and Mark

Rinaldi as members of the Planning Board of the Town/Village of Harrison, against Defendants

Stephen Malfitano, Joseph Cannella, Robert Paladino, Thomas Scappaticci, and Pat Vetere as

members of the Board of Trustees of the Town/Village of Harrison, and against Defendant

Stephen Malfitano as Supervisor/Mayor of the Town/Village of Harrison, and Defendant Robert

W. Fitzsimmons as Building Official of the Town/Village of Harrison (collectively,

"Defendants").[2]  Plaintiffs' remaining § 1983 cause of action is asserted against Malfitano

---

[1] Plaintiffs' Amended Complaint is appended to the Notice of Removal, filed with this
Court on April 3, 2009.  (Dkt. No. 1.)

[2] Defendants Heaship, AuRutick, Spano, Kraus, Reich, Donat, and Rinaldi are no longer
parties to this Action.  (*See* Pls.' Resp. to Defs.' Rule 56.1 Statement ¶ 98 (Dkt. No. 87).)
In related actions in state court, Plaintiffs erroneously named Thomas Heaship, rather
than Thomas Heaslip, as a defendant.  While the Court would prefer to refer to the cases by the
correct spelling of former-Defendant Heaslip's name, after nearly a decade of litigation, the error
appears to have stuck.  Thus, the Court will continue to refer to the various actions and appeals
as *Heaship I*, *Heaship II*, and *Heaship III*, but notes the misspelling.

individually.[3]  Both Plaintiffs and Defendants have moved for summary judgment pursuant to

Federal Rule of Civil Procedure 56(a).  (Dkt. Nos. 72, 77.)  For the reasons given below,

Plaintiffs' Motion is denied and Defendants' Motion is granted.

## I.  Background

### A.  Factual Background

While there is much in dispute in this case, the Parties clearly do agree on certain facts.

Plaintiffs own real property in Harrison, New York.  (Pls.' Rule 56.1 Statement of

Undisputed Facts ("Pls.' 56.1") ¶ 1 (Dkt. No. 73); Defs.' Resp. to Pls.' Rule 56.1 Statement

("Defs.' 56.1 Resp.") ¶ 1 (Dkt. No. 82); Defs.' Rule 56.1 Statement ("Defs.' 56.1") ¶¶ 1–2 (Dkt.

No. 79); Pls.' Resp. to Defs.' Rule 56.1 Statement ("Pls.' 56.1 Resp.") ¶¶ 1–2 (Dkt. No. 87).)

When Plaintiffs purchased the properties located at 24 and 30 Franklin Avenue, they were each

improved by a single-family dwelling and had a total frontage of 150 feet, and a depth of 100

feet.  (Pls.' 56.1 ¶¶ 5–6; Defs.' 56.1 Resp. ¶¶ 5–6.)  At the time of acquisition, the properties

were zoned B-Two Family.  (Pls.' 56.1 ¶ 4; Defs.' 56.1 Resp. ¶ 4.)  The B-Two Family

classification requires minimum lot sizes measuring 50 feet by 100 feet.  (Pls.' 56.1 ¶ 7; Defs.'

56.1 Resp. ¶ 7.)  On or about February 27, 2007, Plaintiffs filed a subdivision application with

the Town/Village of Harrison Planning Board ("Planning Board") to turn the two existing lots at

24 and 30 Franklin Avenue into three new lots measuring 50 feet by 100 feet.  (Pls.' 56.1 ¶ 8;

Defs.' 56.1 Resp. ¶ 8; Defs.' 56.1 ¶ 6; Pls.' 56.1 Resp. ¶ 6.)[4]  The subdivision application went

before the Planning Board for sketch plan and State Environmental Quality Review Act

---

[3] Plaintiffs also bring a sixth cause of action for attorneys' fees under 42 U.S.C. § 1988. However, Plaintiffs' instant Motion only seeks summary judgment as to the second, third, and fourth causes of action.  (Mem. of Law in Supp. of Pls.' Mot. for Summ. J. 4 (Dkt. No. 74).)

[4] In later proceedings related to this application, Plaintiffs indicated their intention to rent out the two-family houses they proposed to build.  (Pls.' 56.1 ¶ 9; Defs.' 56.1 Resp. ¶ 9.)

("SEQRA") review.  (Pls.' 56.1 ¶ 10; Defs.' 56.1 Resp. ¶ 10.)  The Parties do not dispute that the subdivision application indicated that the single-family dwelling at 24 Franklin Avenue was to remain.  (Pls.' 56.1 ¶ 13; Defs.' 56.1 Resp. ¶ 13; Defs.' 56.1 ¶ 26; Pls.' 56.1 Resp. ¶ 26.)

With the application pending before the Planning Board, on June 1, 2007, Plaintiffs submitted drawings to the Architectural Review Board ("ARB") for a new two-family dwelling to be located at 24 Franklin Avenue.  (Pls.' 56.1 ¶ 13; Defs.' 56.1 Resp. ¶ 13.)  Plaintiffs did not amend their subdivision application to reflect the intended construction of a new building at 24 Franklin Avenue.  (Pls.' 56.1 ¶ 13; Defs.' 56.1 Resp. ¶ 13; Defs.' 56.1 ¶ 26; Pls.' 56.1 Resp. ¶ 26; *see also* Pls.' 56.1 ¶ 14; Defs.' 56.1 Resp. ¶ 14.)

On June 20, 2007, the Planning Board held a hearing on Plaintiffs' subdivision application, during which members of the public voiced concerns about Plaintiffs' application and the proposed construction, including concerns about, among other things, parking, landscaping, and "transient" renters.  (Pls.' 56.1 ¶¶ 15–16; Defs.' 56.1 Resp. ¶¶ 15–16.)  It was suggested at the meeting that if the public wished to change the neighborhood zoning allowing the construction of two-family dwellings, the issue should be raised with the Town Board of Trustees.  (Pls.' 56.1 ¶ 18; Defs.' 56.1 Resp. ¶ 18.)  The Planning Board meeting was then adjourned until July 24, 2007.  (Pls.' 56.1 ¶ 18; Defs.' 56.1 Resp. ¶ 18.)

On July 6, 2007, Plaintiffs filed applications for building permits for the construction of two-family dwellings at 24 and 30 Franklin Avenue, (Pls.' 56.1 ¶ 19; Defs.' 56.1 Resp. ¶ 19; Defs.' 56.1 ¶ 32; Pls.' 56.1 Resp. ¶ 32), and on July 18, 2007 applied for a demolition permit for the existing structure at 30 Franklin Avenue, (Pls.' 56.1 ¶ 20; Defs.' 56.1 Resp. ¶ 20).

On July 12, 2007, neighborhood homeowners presented a petition to the Board of Trustees formally requesting that the area be rezoned to restrict development of two-family dwellings.  (Pls.' 56.1 ¶ 21; Defs.' 56.1 Resp. ¶ 21.)

On July 24, 2007, the hearing before the Planning Board was continued, at which time the Planning Board issued Resolution 2007/33, a final approval on Plaintiffs' subdivision application ("Final Subdivision Plat Approval").  (Aff. of Mark N. Reinharz, Esq. ("Reinharz Aff.") Ex. 12 ("Final Plat Approval Resolution") (Dkt. No. 80).)  The Final Subdivision Plat Approval granted Plaintiffs permission to subdivide the parcel into three new lots and retain the existing structure on lot number one, 24 Franklin Avenue.  (Defs.' 56.1 ¶ 22; Pls.' 56.1 Resp. ¶ 22.)  That approval was conditioned on no changes being made to the plans without prior approval of the Planning Board.  (Final Plat Approval Resolution 2–3.)  The Planning Board also adopted a negative declaration pursuant to SEQRA on Plaintiffs' application.  (Pls.' 56.1 ¶ 29; Defs.' 56.1 Resp. ¶ 29; Defs.' 56.1 ¶ 21; Pls.' 56.1 Resp. ¶ 21; Reinharz Aff. Ex. 11, at 2 ("Negative SEQRA Decl.").)[5]

On July 31, 2007, the Planning Board issued Resolution PB2007/28, positively recommending the zoning amendment which would prohibit the construction of two-family homes on Plaintiffs' land.  (Pls.' 56.1 ¶ 31; Defs.' 56.1 Resp. ¶ 31.)

On August 14, 2007, the ARB approved the proposed structures for 24 and 30 Franklin Avenue.  (Pls.' 56.1 ¶ 33; Defs.' 56.1 Resp. ¶ 33.)[6]

―――――――――

[5] The Court notes that contrary to what the designation suggests, the "Negative Declaration" under SEQRA confirmed that the proposed action "[would] not have a significant effect on the environment[]."  (Negative SEQRA Decl. 2.)

[6] Defendants deny Plaintiffs' statement that the ARB approval of the proposed structures occurred while the Planning Board and Board of Trustees were considering the pending rezoning request, but do not appear to contest Plaintiffs' assertion that approval of the proposed structures was granted on the date cited.  (*See* Pls.' 56.1 ¶ 33; Defs.' 56.1 Resp. ¶ 33.)

On September 5, 2007, Plaintiffs applied for a demolition permit for the existing structure at 24 Franklin Avenue and on September 9, 2007, received the requested permit.  (Pls.' 56.1 ¶ 40; Defs.' 56.1 Resp. ¶ 40.)  The structure was demolished on September 10, 2007.  (Pls.' 56.1 ¶ 40; Defs.' 56.1 Resp. ¶ 40.)

On September 19, 2007, Plaintiffs received a letter from Robert Fitzsimmons, the Town's Building Official, denying the building permit for the proposed structure at 24 Franklin Avenue and instructing Plaintiffs that "[w]ith the removal completed of the existing structure that was known as 24 Franklin Ave, [Plaintiffs] now need to amend both the filed subdivision plat and the S-1 and S-2 site plans dated March 5, 2007 to reflect said change."  (Pls.' 56.1 Resp. ¶ 37; *see also* Defs.' 56.1 ¶ 37; Reinharz Aff. Ex. 6, ¶ 61.)

On September 20, 2007, the Board of Trustees passed a resolution adopting Local Law No. 4, which rezoned Block 52, the location of the lots, from "B" (two-family residences) to "R-50" (one-family residences).  (Pls.' 56.1 ¶ 32; Defs.' 56.1 Resp. ¶ 32; Defs.' 56.1 ¶ 29; Pls.' 56.1 Resp. ¶ 29.)  Local Law No. 4 would not permit construction of two-family dwellings in the absence of a zoning variance.  (Defs.' 56.1 ¶ 41; Pls.' 56.1 Resp. ¶ 41.)

On September 21, 2007, Plaintiffs submitted a building permit application for a two-family dwelling at 28 Franklin Avenue.  (Defs.' 56.1 ¶¶ 38–39; Pls.' 56.1 Resp. ¶¶ 38–39; Reinharz Aff. Ex. 19.)  On September 24, 2007, Plaintiffs received a letter from Building Official Fitzsimmons, informing them that their permit application was denied because

> [t]he property is located in a R-50 Zoning District and pursuant to § 235-9A the Table of Use Regulations of the Code of the Town/Village of Harrison that were amended on September 20, 2007 changing the Zoning District from a "B" one or two family zone to a R-50 zone allowing only one family residences.  The application for the new two family residence will require a use variance to be granted.

6

(Reinharz Aff. Ex. 20.)  Plaintiffs did not seek a variance, (Defs.' 56.1 ¶ 42; Pls.' 56.1 Resp. ¶ 42), and instead filed an action in New York State Supreme Court in November 2007, (Defs.' 56.1 ¶ 43; Pls.' 56.1 Resp. ¶ 43).

B.  Procedural History

On November 30, 2007, Plaintiffs filed a Notice of Petition requesting an order of mandamus, pursuant to New York Civil Practice Law and Rules ("N.Y. C.P.L.R.") Article 78 "[d]irecting the Building Official of the Town/Village of Harrison . . . to issue certain building permits," and also "annulling, vacating and setting aside" the zoning action by the Town.  (*See* Reinharz Aff. Ex. 6, ¶¶ 2–3.)  The Petition also sought damages pursuant to § 1983 on the grounds that the Town violated Plaintiffs' procedural and substantive due process rights.  (*Id.* ¶¶ 144–49.)

On September 16, 2008, the New York Supreme Court ruled on the Petition.  (Reinharz Aff. Ex. 21 ("*Heaship I*").)  The court, per Justice Barbara Zambelli, concluded that the Board of Trustees' rezoning decision was "arbitrary and capricious, an abuse of discretion and affected by an error of law," and declared the rezoning invalid due to its failure to comply with several state laws.  (*Id.* at 30.)[7]  Justice Zambelli also dismissed Plaintiffs' mandamus claim because Plaintiffs had failed to exhaust their administrative remedies and take an appeal from the denial of building permits.  (*Id.* at 29.)  However, the court declined to rule on Plaintiffs' § 1983 claims, severed the claims, and transferred them to another state court for further proceedings.  (*Id.* at 30.)  The

---

[7] More specifically, Justice Zambelli found that the area was rezoned "so as to prevent [Plaintiffs] from developing their [p]roperties with two family houses[,] and [that the Board of Trustees] sought to enact th[e] change quickly so as to accomplish th[at] end," and that "[a]s a matter of law, the [Board of Trustees'] reliance upon generalized community opposition was an improper basis upon which to determine th[e] zoning matter."  (*Heaship I* 23.)  Justice Zambelli also found the rezoning to be in violation of the comprehensive plan for Harrison, and in violation of "several statutory procedural requirements."  (*Id.* at 24.)

severed action was given a new index number and was assigned to Justice Nicholas Colabella of the Westchester Supreme Court.  On October 14, 2008, Defendants appealed *Heaship I*, (Reinharz Aff. Ex. 22), though the extent of that appeal is disputed by the Parties, (Pls.' 56.1 ¶ 47; Defs.' 56.1 Resp. ¶ 47; Defs.' 56.1 ¶ 50; Pls.' 56.1 Resp. ¶ 50).

While the *Heaship I* appeal was pending, on March 3, 2009, Plaintiffs commenced a second state-court action, under index number 09/4101, before Justice Zambelli, seeking an order of mandamus directing the Town to issue building permits.  (Reinharz Aff. Ex. 23, ¶ 2.)

On April 3, 2009, Defendants removed the action before Justice Colabella to this Court. (Dkt. No. 1.)  The original Article 78 proceeding *Heaship I*, under index number 07/24531, continued in state court while the instant Action proceeded to summary judgment.

On August 10, 2009, Justice Zambelli issued an order dismissing Plaintiffs' mandamus claims for failure to timely appeal.  (Reinharz Aff. Ex. 24 ("*Heaship II*").)  Justice Zambelli also denied Plaintiffs' claims for declaratory relief based on vested rights.  (*Id.* at 18–19.)  However, Justice Zambelli found Plaintiffs were "entitled to the issuance of the three building permits as of right."  (*Id.* at 19.)  On September 1, 2009, Defendants appealed *Heaship II*, only to the extent the court ruled Plaintiffs were entitled to the three building permits.  (Reinharz Aff. Ex. 25.)

With their state-court actions lumbering forward, on December 23, 2009, Plaintiffs filed a motion for summary judgment and accompanying papers in this Court, (Dkt. Nos. 9–11), which Defendants opposed on the same day, (Dkt. Nos. 14–15).  On February 3, 2010, Plaintiffs filed their reply.  (Dkt. No. 20.)  The Court held oral argument on June 29, 2010.

Subsequently, the Appellate Division of the Second Judicial Department ("Appellate Division") issued opinions on the two pending state-court appeals.  In the first, the Appellate Division reversed Justice Zambelli's decision in *Heaship I* for failure to follow the proper

procedural mechanism.  *See 24 Franklin Ave. R.E. Corp. v. Heaship*, 901 N.Y.S.2d 863, 864

(App. Div. 2010) ("*Heaship I Appeal*").  The action was remitted to the lower court, *id.*, and

assigned to Justice William J. Giacomo.  In the second action, the Appellate Division reversed

the judgment entered in *Heaship II*, based on the procedural infirmities in *Heaship I.  See 24

Franklin Ave. R.E. Corp. v. Town of Harrison*, 74 A.D.3d 981, 981–82 (App. Div. 2010)

("*Heaship II Appeal*").[8]  Pending the outcome of the state-court proceedings, the Court stayed

consideration of the summary judgment motion on the consent of the Parties.  (*See* Dkt. (entry

for Oct. 4, 2010).)

On May 4, 2011, more than two years after the commencement of the instant federal

Action, the Court held a status conference to discuss updates in the state-court litigation.  (Dkt.

(minute entry for May 4, 2011).)  The Court agreed to continue to stay consideration of

Plaintiffs' pending summary judgment motion and instructed the Parties to inform the Court by

letter once the state courts had resolved the various pending motions.  (*Id.*)

On February 27, 2013, following a status conference the previous day, the Court issued

an order formally withdrawing Plaintiffs' summary judgment motion, with consent of the Parties,

----

[8] On September 17, 2010, Plaintiffs' filed a summons with notice in state court, captioned *24 Franklin Ave. R.E. Corp. v. Cannella*, under index number 10/22630.  (Defs.' 56.1 ¶ 85; Pls.' 56.1 Resp. ¶ 85.)  Plaintiffs subsequently filed a default motion pursuant to N.Y. C.P.L.R. § 3215, which Defendants opposed.  (Defs.' 56.1 ¶ 85; Pls.' 56.1 Resp. ¶ 85.)  Justice Mary H. Smith of Westchester County Supreme Court initially granted the motion, (Reinharz Aff. Ex. 30), but on renewal, Justice Joan B. Lefkowitz vacated the default, (Reinharz Aff. Ex. 31).

On June 1, 2011, Plaintiffs filed a complaint against four Town Board members and Building Official Fitzsimmons in state court, seeking punitive damages and attorneys' fees pursuant to § 1983.  The defendants moved to dismiss the complaint, but on August 13, 2014, the court denied the defendants' motion.  (Reinharz Aff. Ex. 34.)  The defendants appealed the decision on August 28, 2014, (Reinharz Aff. Ex. 35), and on May 4, 2016, the Appellate Division reversed the August 13, 2014 decision and held that the Board members were entitled to absolute immunity and that Fitzsimmons was entitled to qualified immunity, *24 Franklin Ave. R.E. Corp. v. Cannella*, 31 N.Y.S.3d 533, 535 (App. Div. 2016).

without prejudice to Plaintiffs' ability to file a revised motion at a later time.  (Dkt. No. 28.)  On

the same day, the Court also issued a separate order placing this case on the suspense calendar

because relevant issues had to be decided in state court before this Action could proceed to the

merits.  (Dkt. No. 29.)

What followed was a slew of correspondence from the Parties throughout March, April,

and May 2013, in which Plaintiffs' counsel attempted to, among other things: (1) convince this

Court that "all state court jurisdiction ceased as a matter of law" following the removal of the

instant case, (Letter from Joseph A. Messina, Esq., to Court (Mar. 27, 2013) 2 (Dkt. No. 39)); (2)

have the state court confirm the related nature of various proceedings and this Action, (Letter

from Joseph A. Messina, Esq., to Court (May. 23, 2013) 1 (Dkt. No. 37)); and (3) remove the

Article 78 proceeding to this Court, (*id.* at 1–2).[9]  The Court ultimately declined the Parties'

proposal to remove the state-court proceedings, (Dkt. No. 38), and in an order dated June 3,

2013, reiterated that pursuant to "its February 27, 2013 Suspense Order . . . the state court should

decide the Article 78 and other state issues before this Court determines the § 1983 causes of

action," (Order (June 3, 2013) 5 (Dkt. No. 46)).[10]

On March 24, 2014, Justice Giacomo issued a decision on the remanded *Heaship I*

*Appeal*.  *See 24 Franklin Ave. R.E. Corp. v. Heaship*, No. 24531/2007, 2014 WL 1258231 (N.Y.

Sup. Ct. Mar. 24, 2014) ("*Heaship III*").  In that decision, Justice Giacomo invalidated Local

Law No. 4 on the grounds that Defendants failed to comply with SEQRA, General Municipal

Law § 239-m, and Town Law § 264, *id.* at *5–8, and directed the Building Official "to issue

_____

[9] Defendants' counsel joined in the proposal to remove.  (Dkt. No. 38.)

[10] A fuller recitation of the correspondence referenced above is detailed in the Court's
June 3, 2013 Order.  (Dkt. No. 46.)

building permits to petitioners in compliance with the approved subdivision," *id.* at *9.
Defendants appealed the decision to the Appellate Division. (*See* Reinharz Aff. Ex. 28.)

On May 20, 2014, at the Parties' request, (Dkt. Nos. 48–49), the Court held a status
conference, (Dkt. (minute entry for May 20, 2014)). At the conference, the Court ordered the
Suspense Order to remain in effect until further notice. (*Id.*)

Nearly two years later, the Court received an update from Plaintiffs' counsel on the status
of the appeal of Justice Giacomo's decision in *Heaship III*—the last of the pending state-court
appeals. (Letter from Joseph A. Messina, Esq., to Court (Apr. 5, 2016) (Dkt. No. 52).)
Plaintiffs' counsel informed the Court that oral argument on the pending appeal was held on
March 15, 2016 and that once issued, the decision of the Appellate Division would be forwarded
to the Court. (*Id.* at 2.)[11] On May 4, 2016, the Appellate Division issued its decision. *See 24
Franklin Ave. R.E. Corp. v. Heaship*, 30 N.Y.S.3d 695 (App. Div. 2016) ("*Heaship III Appeal*").
In its decision, the Appellate Division held, that "[w]hile the Supreme Court properly determined
that [Local Law] No. 4 was invalid, it erred in directing the Town Building Official to issue the
building permits to the plaintiffs." *Id.* at 698. The Appellate Division remanded the matter "to
the Planning Board for further proceedings as to any planned subdivision of the subject
property." *Id.* at 699.[12]

On June 2, 2016, the Court held a conference, (Dkt. (minute entry for June 2, 2016)), and
subsequently issued a scheduling order for the Parties' renewed cross-motions for summary
judgment, (Dkt. No. 63). Following a request for an extension, (Dkt. No. 68), which the Court

---

[11] The Court notes that the appeal was fully briefed in December 2014.

[12] On the same day, the Appellate Division decided *Cannella*, which, as noted, held that
the Town Board members were entitled to absolute immunity and Fitzsimmons was entitled to
qualified immunity. 31 N.Y.S.3d at 535.

granted, (Dkt. No. 69), the Parties simultaneously filed their Motions for Summary Judgment and accompanying papers on August 8, 2016, (Dkt. Nos. 72–75, 77–80).[13]  On September 19, 2016, the Parties submitted their respective opposition papers, (Dkt. Nos. 81–84), and on October 5, 2016, the Parties filed reply papers, (Dkt. Nos. 87–91).

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same).  "In determining whether summary judgment is appropriate," a court must "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant."  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks omitted); *see also Borough of Upper Saddle River v. Rockland Cty. Sewer Dist. No. 1*, 16 F. Supp. 3d 294, 314 (S.D.N.Y. 2014) (same).  Additionally, "[i]t is the movant's burden to show that no genuine factual dispute exists."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Aurora Commercial Corp. v. Approved Funding Corp.*, No. 13-CV-230, 2014 WL 1386633, at *2 (S.D.N.Y. Apr. 9, 2014) (same).  "However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue

---

[13] On August 4, 2016, counsel to Builders Institute of Westchester and the Mid-Hudson Region, Inc. requested permission to file an amicus brief on behalf of Plaintiffs.  (Dkt. No. 70.) The Court denied the request on August 8, 2016.  (Dkt. No. 76.)

of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and internal quotation marks omitted).  Further, "[t]o survive a [summary judgment] motion . . . , [a nonmovant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), and "cannot rely on the mere allegations or denials contained in the pleadings," *Walker v. City of N.Y.*, No. 11-CV-2941, 2014 WL 1244778, at *5 (S.D.N.Y. Mar. 26, 2014) (internal quotation marks omitted) (citing, inter alia, *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009)).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (internal quotation marks omitted).  At summary judgment, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (internal quotation marks omitted); *see also In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, MDL No. 1358, No. M21–88, 2014 WL 840955, at *2 (S.D.N.Y. Mar. 3, 2014) (same).  Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharm. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (internal quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

B.  Analysis

Plaintiffs assert that "Defendants infringed upon Plaintiff[s'] constitutional rights in changing zoning from B (two family) to R-50 (single family) through an orchestrated

campaign—motivated by politics and subterfuge and fraught with fundamental procedural

irregularities—to deprive Plaintiffs of their clear and cognizable property rights."  (Mem. of Law

in Supp. of Pls.' Mot. for Summ. J. ("Pls.' Mem.") 2–3 (Dkt. No. 74).)

"To state a claim under [§ 1983], the plaintiff must show that a defendant, acting under

color of state law, deprived him of a federal constitutional or statutory right."  *Sykes v. Bank of

Am.*, 723 F.3d 399, 405–06 (2d Cir. 2013).  Here, Plaintiffs allege deprivations of substantive

due process (Am. Compl. ¶¶ 46–106, 115–25), procedural due process, (*id.* ¶¶ 107–14), and

equal protection, (*id.* ¶¶ 126–50).  Though phrased as different kinds of due process causes of

action, examination of the Amended Complaint reveals that the due process causes of action

alleged are simply different legal theories about how Plaintiffs allegedly were injured.

Defendants seek not only to thwart Plaintiffs' Motion, but seek judgment in their favor on

the grounds that Plaintiffs' claims are precluded by collateral estoppel, that Plaintiffs lack

standing to challenge Local Law No. 4, that any constitutional challenge of Local Law No. 4 is

moot as that law is now a nullity, and that Plaintiffs' constitutional injuries are not ripe for

adjudication.  (*See* Mem. of Law in Supp. of the Defs.' Mot. for Summ. J. ("Defs.' Mem.") 8–17

(Dkt. No. 78).)  Before addressing the merits of the Parties' Motions, the Court must first tackle

the jurisdictional challenges Defendants raise.  *See Steel Co. v. Citizens for a Better Env't*, 523

U.S. 83, 94 (1998) (noting that "[w]ithout jurisdiction the court cannot proceed at all in any

cause" and "when [jurisdiction] ceases to exist, the only function remaining to the court is that of

announcing the fact and dismissing the cause" (internal quotation marks omitted)).

Despite nearly a decade of litigating this Action, it appears that the Parties disagree on the

fundamental question of what claims are before this Court.  (*See* Mem. of Law in Opp'n to

Defs.' Mot. for Summ. J. 4 (Dkt. No. 83) (asserting Defendants "mischaracteriz[e] . . . the

actionable wrong" in this case); Tr. of Conf. (June 2, 2016) 6–7 (Dkt. No. 66) ("[Defendants]

violation of [Plaintiffs'] substantive due process due to [Defendants'] fundamental procedural

irregularities is the issue before this Court."); *id.* at 11 ("[The] discretion of the [P]lanning

[B]oard to grant subdivisions" is "what this [§] 1983 claim is *not* about." (emphasis added)).)

Plaintiffs assert that the relevant issue is "whether in passing Local Law [No.] 4, Defendant[s]

violated Plaintiff[s'] constitutional rights."  (Pls.' Mem. 4 n.4.)  Defendants argue that "[t]he

entire [A]ction centers upon the claim that Plaintiffs are entitled to building permits that would

allow them to build three (3) new two-family homes and that those permits have been wrongfully

withheld by . . . Defendants," (Defs.' Mem. 1), while Plaintiffs contend that they "are not now

seeking a prospective benefit[,] but are instead seeking damages for the unconstitutional

infringement o[f] Plaintiff[s'] rights through the arbitrary and capricious re-zoning," (Pls.' Mem.

5).

       In the end, Plaintiffs have represented to the Court that they are seeking damages for the

violation of their constitutional rights pursuant to § 1983 based on the enactment of Local Law

No. 4.  Causes of action two, three, and four of the Amended Complaint allege as much, and so

the Court will proceed to address these claims.  However, it is important to note that Plaintiffs

are not seeking an order allowing them to build the two-family residences for which they once

sought building permits.

       At the outset, it is important to note that Plaintiffs have not indicated whether they are

mounting a facial or as-applied challenge to Local Law No. 4.  However, as there is no allegation

that Local Law No. 4 was invalid on its face (on due process or equal protection grounds), the

Court construes Plaintiffs' challenge to Local Law No. 4 as it being unconstitutional as applied

to Plaintiffs.

"Ripeness is a doctrine rooted in both Article III's case or controversy requirement and prudential limitations on the exercise of judicial authority." *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005).  The ripeness doctrine is "designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) (internal quotation marks omitted)).  An action is thus not ripe if it involves contingent future events that may not occur. *See Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985).

"[T]he Supreme Court has developed specific ripeness requirements applicable to land use disputes." *Murphy*, 402 F.3d at 347.  In *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), the Supreme Court formulated a two-pronged approach to evaluate the ripeness of a Fifth Amendment Takings Clause claim.  The first prong requires the property owner to obtain a final, definitive position as to the application of the relevant zoning laws to the property from the municipal entity responsible for those laws. *Id.* at 186.  The second prong requires the property owner to seek compensation for an alleged taking before initiating a federal lawsuit. *Id.* at 194.  Although the Supreme Court originally articulated this ripeness framework in the context of a regulatory takings challenge, *see id.* at 186, "the Second Circuit has applied prong one of the *Williamson* analysis to land use disputes involving more than just takings claims," *see Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona*, 915 F. Supp. 2d 574, 597 (S.D.N.Y. 2013) (citing *Murphy*, 402 F.3d at 349–50).

16

As noted, prong one requires the property owner "to obtain a final definitive position as to the application of the relevant zoning law[] as to the property [at issue]." *Id.* (citing *Williamson*, 473 U.S. at 186). "A final decision exists when a development plan has been submitted, considered and rejected by the governmental entity with the power to implement zoning regulations." *S & R Dev. Estates, LLC v. Bass*, 588 F. Supp. 2d 452, 461 (S.D.N.Y. 2008); *see also Goldfine v. Kelly*, 80 F. Supp. 2d 153, 159 (S.D.N.Y. 2000) ("In order to have a final decision, a development plan must be submitted, considered, and rejected by the governmental entity." (internal quotation marks omitted)). Even if a plan has been submitted and rejected under the challenged zoning law, a claim is not ripe until the "property owner submit[s] at least one meaningful application for a variance." *Murphy*, 402 F.3d at 348; *see also id.* at 353 ("[F]ailure to pursue a variance prevents a federal challenge to a local land use decision from becoming ripe." (citing *Williamson*, 473 U.S. at 190)); *Bikur Cholim, Inc. v. Village of Suffern*, 664 F. Supp. 2d 267, 275 (S.D.N.Y. 2009) ("In general, . . . failure to seek a variance prevents a zoning decision from becoming ripe."); *S & R Dev. Estates*, 588 F. Supp. 2d at 461–64 (dismissing claims on ripeness grounds, where the plaintiff had not applied for a variance); *Korcz v. Elhage*, 767 N.Y.S.2d 737, 738–39 (App. Div. 2003) (same); *Dick's Quarry, Inc. v. Town of Warwick*, 739 N.Y.S.2d 464, 464–65 (App. Div. 2002) (same). In the absence of at least one meaningful application for a variance, a plaintiff cannot seek federal court review of a zoning ordinance or provision, because it "is not a final, reviewable decision." *Williamson*, 473 U.S. at 186. In the end, "[a] case is ripe when the court 'can look to a final, definitive position from a local authority to assess precisely how [a property owner] can use [his or her] property.'" *Bikur Cholim*, 664 F. Supp. 2d at 275 (quoting *Murphy*, 402 F.3d at 347).

17

The Second Circuit has held that the final decision rule: (1) "aids in the development of a full record"; (2) ensures that a court "will . . . know precisely how a regulation will be applied to a particular parcel"; (3) recognizes the possibility that, by granting a variance, the administrative body "might provide the relief the property owner seeks without requiring judicial entanglement in constitutional disputes"; and (4) "evinces the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution." *Murphy*, 402 F.3d at 348.

In this case, there has been no final decision.  Plaintiffs do not dispute that they could have, but did not, seek a variance under Local Law No. 4.  (*See* Defs.' 56.1 ¶ 42; Pls.' 56.1 Resp. ¶ 42.)  A variance might have given Plaintiffs the ability to build their two-family residences, thus mitigating their damages and "provid[ing] the relief [Plaintiffs] seek[]." *Murphy*, 402 F.3d at 348.  Therefore, because a variance was possible but not pursued, there is no basis for Plaintiffs to challenge Local Law No. 4 as applied to them (because it was not "applied").  And because there never has been a facial challenge to the law, there is no ripe claim before the Court.  *See Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 297 (1981) (noting that if the plaintiffs were to "seek administrative relief under the [variance] procedures, a mutually acceptable solution might well be reached with regard to individual properties, thereby obviating any need to address the constitutional questions," and that "[t]he potential for such administrative solutions confirm[ed] the conclusion" that the issues were not yet ripe); *see also Congregation Rabbinical Coll. of Tartikov*, 915 F. Supp. 2d at 599 (finding the plaintiffs' failure to make a formal application to the relevant authority "le[ft] [the] [p]laintiffs outside the boundaries of the final decision rule"); *Kittay v. Giuliani*, 112 F. Supp. 2d 342, 349 (S.D.N.Y. 2000) ("Without a final agency decision regarding the applicability of the [regulation] to [the

18

subject] property, the alleged injury to [the bankruptcy] estate is, for Article III purposes, speculative."), *aff'd*, 252 F.3d 645 (2d Cir. 2001).

As the Court finds that Plaintiffs' claims are not ripe, it need not address Defendants' collateral estoppel, standing, or mootness arguments. And because in the absence of proper jurisdiction, the Court "cannot proceed at all," the Court does not address the merits of Plaintiffs' due process and equal protection challenges, *Steel Co.*, 523 U.S. at 94. Accordingly, Defendants' Motion is granted and Plaintiffs' Motion is denied.

## III. Conclusion

For the foregoing reasons, the Court grants Defendants' Motion for Summary Judgment and denies Plaintiffs' Motion for Summary Judgment. The Clerk of Court is respectfully directed to terminate the pending Motions, (Dkt. Nos. 72, 77), enter judgment for Defendants, and close this case.

SO ORDERED.

Dated:      March 30, 2017
            White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE